United States District Court
for the District of New Hampshire

| | |
|---|---|
| Dynamic Network Services, Inc.,<br><br>                     Plaintiff<br><br>vs.<br><br>Timothy J. Wilde,<br><br>                     Defendant | No. 06-cv-37-JM |

**Answer to Amended Complaint**

Now comes Timothy J. Wilde ("Mr. Wilde"), Defendant in the above-entitled matter, and by and through his attorneys, Pierce Atwood LLP, presents the following Answer to the Amended Complaint ("Complaint") of Dynamic Network Services, Inc. ("DynDNS"):

Introduction:   The Complaint contains an unnumbered "Introduction" that does not appear to require a response.  To the extent a response is deemed required, Mr. Wilde denies the allegations contained therein.

1.      Mr. Wilde admits the allegations set forth in paragraph 1 of the Complaint.

2.      Mr. Wilde admits the allegations set forth in paragraph 2 of the Complaint, but points out that he serves as Chairman of the Board of Directors and owns 56.25% of the stock of DynDNS, not 56%.

3.      Mr. Wilde admits the allegations set forth in paragraph 3 of the Complaint, but points out that Messrs. Hitchcock and Daly each own 21.875% of the stock, not 22%.

4.      Mr. Wilde admits the allegations set forth in paragraph 4 of the Complaint.

5.      Mr. Wilde admits the allegations set forth in paragraph 5 of the Complaint.

6.      Mr. Wilde admits the allegations set forth in paragraph 6 of the Complaint.

{P0113407.1}

7.      Mr. Wilde admits the allegations set forth in paragraph 7 of the Complaint.

8.      Mr. Wilde admits the allegations set forth in paragraph 8 of the Complaint.

9.      Mr. Wilde admits the allegations set forth in paragraph 9 of the Complaint.

10.     Mr. Wilde admits the allegations set forth in paragraph 10 of the Complaint.

11.     Mr. Wilde admits the allegations set forth in paragraph 11 of the Complaint to the extent it is suggested that the discussions depicted therein took place at or about the times specified, but is otherwise without knowledge of the precise dates.

12.     Mr. Wilde admits the allegations set forth in paragraph 12 of the Complaint to the extent it is suggested that the discussions depicted therein took place at or about the times specified, but is otherwise without knowledge of the precise dates.

13.     Mr. Wilde admits the allegations set forth in paragraph 13 of the Complaint.

14.     Mr. Wilde admits the allegations set forth in paragraph 14 of the Complaint.

15.     Mr. Wilde admits the allegations set forth in paragraph 15 of the Complaint.

16.     Mr. Wilde admits the allegations set forth in paragraph 16 of the Complaint to the extent it is suggested that on July 31, 2004, Wilde, Reinhardt, Hitchcock and Daly signed the legal documents that implemented and effectuated the reorganization plan.  Mr. Wilde denies the remaining allegations set forth in paragraph 16 of the Complaint.

17.     Mr. Wilde admits the allegations set forth in paragraph 17 of the Complaint.

18.     Mr. Wilde admits the allegations set forth in paragraph 18 of the Complaint.

19.     Mr. Wilde admits the allegations set forth in paragraph 19 of the Complaint to the extent it is suggested that, in the fall of 2004, he began to travel to California for personal reasons and that, not long thereafter, he began devoting significant time to working on DynDNS

business from Davis, California.  Mr. Wilde is without knowledge of truth or falsity of the

remaining allegations set forth in paragraph 19 of the Complaint.

20.    Mr. Wilde admits the allegations set forth in paragraph 20 of the Complaint to the

extent it is suggested that he agreed to, and appeared for, an interview with a high technology

company that had approached him.  Mr. Wilde further admits that he and Messrs. Daly and

Hitchcock met with DynDNS' corporate counsel at that time to discuss, among other things, a

prospective buyout of Mr. Wilde's interest, but denies the implicit suggestion that the impetus

for the meeting with corporate counsel was Mr. Wilde's job interview.  Mr. Wilde also admits

that upon his return from vacation, he reaffirmed that which he previously informed Messrs.

Daly and Hitchcock, to wit: that he did not wish to be bought out.  Mr. Wilde denies the

remaining allegations set forth in paragraph 20 of the Complaint.

21.    Mr. Wilde admits the allegations set forth in paragraph 21 of the Complaint to the

extent it is suggested that in the late spring of 2005, Mr. Wilde indicated his desire to move to

California.  Mr. Wilde further admits that during the early summer of 2005, Messrs. Wilde,

Hitchcock and Daly began to discuss restructuring Mr. Wilde's role in the company.  Mr. Wilde

denies the remaining allegations set forth in paragraph 21 of the Complaint.

22.    Mr. Wilde denies the allegations set forth in paragraph 22 of the Complaint to the

extent it is suggested that the restructuring plan was developed without consultation with

DynDNS' attorney.  Mr. Wilde admits the remaining allegations set forth in paragraph 22 of the

Complaint.

23.    Mr. Wilde admits the allegations set forth in paragraph 23 of the Complaint to the

extent it is suggested that in late July 2005, Mr. Hitchcock directed DynDNS' corporate counsel

to draft legal documents that, upon execution, would restructure the company in the manner

jointly desired by Messrs. Wilde, Daly and Hitchcock.  Mr. Wilde further admits that DynDNS'
corporate counsel drafted the documents.  Mr. Wilde denies the remaining allegations set forth in
paragraph 23 of the Complaint.

24.     Mr. Wilde admits the allegations set forth in paragraph 24 of the Complaint to the
extent it is suggested that on August 4, 2005, Wilde, Hitchcock and Daly executed formal
agreements that restructured the company.  Mr. Wilde denies the remaining allegations set forth
in paragraph 24 of the Complaint.

25.     Mr. Wilde admits the allegations set forth in paragraph 25 of the Complaint.

26.     Mr. Wilde admits the allegations set forth in paragraph 26 of the Complaint to the
extent it is suggested that the parties' previously strained relationship became even more strained
after Mr. Wilde's departure in August 2005.  Mr. Wilde is without knowledge of truth or falsity
of the further allegation that during the course of the specified teleconferences, Messrs. "Daly
and Hitchcock raised the issue of buying out [Mr.] Wilde" or that "Mr. Wilde indicated that he
was not ready to be bought out of the Company."  Mr. Wilde admits the remaining allegations
set forth in paragraph 26 of the Complaint.

27.     Mr. Wilde admits the allegations set forth in paragraph 27 of the Complaint to the
extent it is suggested that relations continued to deteriorate.  Mr. Wilde further admits that
Messrs. Wilde, Daly and Hitchcock agreed that the principals would meet face-to-face in New
Hampshire to discuss strategic and long-term operational issues, but denies that the decision to
meet in this fashion and at the time specified followed the October 2005 teleconferences.
Rather, the principals agreed to routine quarterly in-person meetings to address operational
issues before Mr. Wilde left for California.

28.     Mr. Wilde admits the allegations set forth in paragraph 28 of the Complaint.

29.     Mr. Wilde admits the allegations set forth in paragraph 29 of the Complaint.

30.     Mr. Wilde admits the allegations set forth in paragraph 30 of the Complaint, but further points out (a) that he expressed his preference for other available options; and (b) that he would need to consult with personal counsel before undertaking any commitment to a buyout.

31.     Mr. Wilde admits the allegations set forth in paragraph 31 of the Complaint to the extent it is suggested that after further discussion of available options, only one of which was a buyout, the principals agreed to revisit these options after the holidays.  Mr. Wilde denies the remaining allegations set forth in paragraph 31 of the Complaint.

32.     Mr. Wilde admits the allegations set forth in paragraph 32 of the Complaint to the extent it is suggested that in early January 2006, he e-mailed Messrs. Hitchcock and Daly requesting that the principals discuss three available options, only one of which was a buyout. Mr. Wilde denies the remaining allegations set forth in paragraph 32 of the Complaint.

33.     Mr. Wilde is without knowledge of the truth or falsity of the allegation, set forth in paragraph 33 of the Complaint, that Messrs. Hitchcock and Daly "discussed amongst themselves the potential terms of a buyout plan whereby the Company would purchase [Mr.] Wilde's interest in [DynDNS] and [Mr.] Wilde would transition out of [DynDNS]."  Mr. Wilde admits the allegations set forth in paragraph 33 of the Complaint to the extent it is suggested that on the night of January 12, 2006, Mr. Daly sent Mr. Wilde an "Intent to Purchase Outline" that envisioned discussion among the principals and corporate counsel of "agreement points" by which DynDNS, after execution of a formal agreement, would redeem Mr. Wilde's shares of stock.  Mr. Wilde denies the remaining allegations set forth in paragraph 33 of the Complaint.

34.     Mr. Wilde denies the allegations set forth in paragraph 34 of the Complaint to the extent it is suggested that discussions between Mr. Wilde, on the one hand, and Messrs. Daly and

Hitchcock, on the other, amounted to negotiations, offers or counter-offers by and among Mr. Wilde and DynDNS. Mr. Wilde admits the remaining allegations set forth in paragraph 34 of the Complaint.

35.     Mr. Wilde denies the allegations set forth in paragraph 35 of the Complaint to the extent it is suggested (a) that Mr. Wilde made "demands"; (b) that Mr. Wilde presented a "counter-offer"; (c) that Mr. Wilde was negotiating with DynDNS; or (d) that Messrs. Hitchcock and Daly agreed, on behalf of DynDNS, to the terms of a "counter-offer". Mr. Wilde is without knowledge of the truth or falsity of the allegation that the teleconferences followed discussions by and between Hitchcock and Daly. Mr. Wilde admits the remaining allegations set forth in paragraph 35 of the Complaint.

36.     Mr. Wilde denies the allegations set forth in paragraph 36 of the Complaint to the extent it is suggested that DynDNS "agre[ed] to, or capitulated on, these points." Mr. Wilde further denies that he and DynDNS "agreed that these would be the final terms of the buyout plan" or that "the Company, Daly, Wilde and Hitchcock had agreed" on the terms of a stock redemption plan. Mr. Wilde admits the remaining allegations set forth in paragraph 36 of the Complaint.

37.     Mr. Wilde denies the allegations set forth in paragraph 37 of the Complaint to the extent it is suggested that there was an "agreed upon buyout plan" presented by e-mail for "board memorialization". Mr. Wilde further denies that his own e-mail responded to the Hitchcock e-mail, that the electronically transmitted word "[t]his" referred to any "agreed upon buyout plan" or that "Wilde accepted the Company's offer and formed a binding agreement." Mr. Wilde admits the remaining allegations set forth in paragraph 37 of the Complaint.

38.    Mr. Wilde admits the allegations set forth in paragraph 38 of the Complaint to the extent it is suggested that Exhibit A, appended to the Complaint, is a copy of the "Intent to Purchase Outline".  Mr. Wilde denies the remaining allegations set forth in paragraph 38 of the Complaint.

39.    Mr. Wilde denies the allegations set forth in paragraph 39 of the Complaint to the extent it is suggested that Mr. Wilde "accept[ed] [a] [DynDNS] proposal with … changes [he] demanded" or that "the Board[ ] unanimous[ly] approve[d] and ratif[ied] [a] buyout plan to which Wilde, Daly and Hitchcock personally agreed."  Mr. Wilde admits the remaining allegations set forth in paragraph 39 of the Complaint.

40.    Mr. Wilde denies the allegations set forth in paragraph 40 of the Complaint.

41.    Mr. Wilde admits the allegations set forth in paragraph 41 of the Complaint to the extent it is suggested that on Friday, January 20, 2006, DynDNS' corporate counsel sent documents to Messrs. Wilde, Daly and Hitchcock with reference to a prospective redemption by DynDNS of Mr. Wilde's stock and related matters.  Mr. Wilde denies the remaining allegations set forth in paragraph 41 of the Complaint.

42.    Mr. Wilde admits the allegations set forth in paragraph 42 of the Complaint to the extent it is suggested that by a January 22, 2006 letter addressed to DynDNS and copied to DynDNS' corporate counsel, Attorney John Marlow advised that "upon further review, Mr. Wilde considers [DynDNS'] offer to purchase his 36 shares of common stock unacceptable and has decided to reject it.  Mr. Wilde will continue to act as a consultant for the company under the terms of his consulting agreement as currently in effect."  Mr. Wilde denies the remaining allegations set forth in paragraph 42 of the Complaint.

43.     Mr. Wilde denies the allegations set forth in paragraph 43 of the Complaint to the extent it is suggested that he "attempt[ed] to renege on [an] agreed-upon and ratified buyout agreement." Mr. Wilde admits the remaining allegations set forth in paragraph 43 of the Complaint.

44.     Mr. Wilde denies the allegations set forth in paragraph 44 of the Complaint.

45.     Mr. Wilde denies the allegations set forth in paragraph 45 of the Complaint.

46.     Mr. Wilde restates and incorporates paragraphs 1 through 45 of this Answer by reference.

47.     Mr. Wilde denies the allegations set forth in paragraph 47 of the Complaint.

48.     Mr. Wilde denies the allegations set forth in paragraph 48 of the Complaint.

49.     Mr. Wilde denies the allegations set forth in paragraph 49 of the Complaint.

50.     Mr. Wilde denies the allegations set forth in paragraph 50 of the Complaint.

51.     Mr. Wilde denies the allegations set forth in paragraph 51 of the Complaint.

52.     Mr. Wilde denies the allegations set forth in paragraph 52 of the Complaint.

53.     Mr. Wilde restates and incorporates paragraphs 1 through 52 of this Answer by reference.

54.     Mr. Wilde denies the allegations set forth in paragraph 54 of the Complaint.

55.     Mr. Wilde denies the allegations set forth in paragraph 55 of the Complaint.

56.     Mr. Wilde denies the allegations set forth in paragraph 56 of the Complaint.

## First Affirmative Defense

The Plaintiff has failed to state a claim upon which relief may be granted.

### Second Affirmative Defense

No contract, whether express or implied in fact or law, to redeem Mr. Wilde's shares of DynDNS stock was ever formed.

### Third Affirmative Defense

The Plaintiff's claims are barred by the doctrine(s) of estoppel.

### Fourth Affirmative Defense

The Plaintiff's claims are barred by the doctrine of waiver.

### Fifth Affirmative Defense

The Plaintiff's contract claim fails for lack of mutuality.

### Sixth Affirmative Defense

The Plaintiff's contract claim fails because, under Delaware law, the redemption of Mr. Wilde's shares, or a contract to so redeem, was subject to certain specified conditions precedent, none of which took place or were satisfied.

### Seventh Affirmative Defense

The Plaintiff's claims are barred by the statute of frauds.

### Eighth Affirmative Defense

The Plaintiff has an adequate remedy at law.

### Ninth Affirmative Defense

The Plaintiff's claim is barred, as it is wrongfully instigated by minority shareholders who are wasting corporate assets and are intent on advancing their own interests, not those of the corporation, DynDNS.

Respectfully submitted,

Timothy J. Wilde

By his attorneys,
Pierce Atwood LLP

Date:  April 24, 2006                          By:  /s/ Lawrence M. Edelman
                                                    Lawrence M. Edelman
                                                    N.H. Bar No. 738
                                                    Pease International Tradeport
                                                    One New Hampshire Avenue
                                                    Suite 350
                                                    Portsmouth, NH 03801
                                                    (603) 433-6300

### Certificate of Service

I hereby certify that a copy of the foregoing Answer to Amended Complaint was served

on the following on this 24th day of April, 2006 and in the manner specified herein:

Electronically Served Through ECF:

Christopher Cole, Esquire
Sheehan Phinney Bass & Green
1000 Elm Street
P.O. Box 3701
Manchester, NH 03105
E-mail: ccole@sheehan.com

/s/ Lawrence M. Edelman
Lawrence M. Edelman